United States Court of Appeals,

Eleventh Circuit.

No. 96-6358.

DONALD B., a minor, By and Through his mother and next friend, CHRISTINE B.; Christine B., is Donald B.'s maternal parent and by state statute, Donald B.'s legal guardian, Plaintiffs-Appellants,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA; Paul J. Sousa, in his official capacity as Superintendent; N.Q. Adams, in his official capacity as a Member of the Board of School Commissioners of Mobile County; Marion P. Warren, in her official capacity as a Member of the Board of School Commissioners of Mobile County; Joseph C. Mitchell, in his official capacity as a Member of the Board of School Commissioners of Mobile County; Hazel H. Fornier, in her official capacity as a Member of the Board of School Commissioners of Mobile County; Jeanne E. Andrews, in her official capacity as a Member of the Board of School Commissioners of Mobile County, Defendants-Appellees.

July 29, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-

Before COX, Circuit Judge, KRAVITCH, Senior Circuit Judge, and STAGG[*], Senior District Judge.

KRAVITCH, Senior Circuit Judge:

Donald B., by and through his mother, Christine B., appeals the district court's order granting judgment as a matter of law to the Board of School Commissioners of Mobile County, Alabama ("the Board"), its superintendent and its members on Donald B.'s claim under the Individuals with Disabilities Education Act ("the IDEA" or "the Act"), 20 U.S.C. §§ 1400-1491, *as amended by* 111 Stat. 37 (1997).[1] Donald B. contends that the district court erred in ruling that under the IDEA the Board had no obligation either to transport him three blocks between his private school and the public school that offered the speech therapy he needed or to provide such services at his private school. We affirm.

---

[*]Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

[1]Donald B. also predicated his complaint upon the Alabama Exceptional Child Education Act, Ala.Code § 16-39, and the Alabama Preschool Special Education Act, Ala.Code § 16-39A. These laws contain provisions that implement the IDEA in Alabama. Donald B. has not argued that these statutes create relevant, substantive rights apart from what the IDEA affords him. Accordingly, we refer hereinafter only to the IDEA as the basis of this suit.

I.

Based on the parties' stipulation of undisputed matters filed with their joint motion to submit the case on their briefs, the district court found the following facts: (1) on November 5, 1993, the Board identified Donald B. as a disabled child; (2) the Board determined that Donald B. should receive special education for impaired speech; (3) at the time of the eligibility decision, Donald B. was enrolled unilaterally by his mother in a private, parochial academy, St. Paul's Episcopal School ("St.Paul's"); (4) St. Paul's stands approximately three blocks from the Mary B. Austin School ("Austin"), a public school that offers speech therapy; (5) the Board receives funds under the IDEA and thus must extend special education and related services to disabled children in its geographic area; (6) on December 13, 1993, the Board agreed to provide speech therapy to Donald B. at Austin as part of an individualized education plan ("IEP") developed for him pursuant to the IDEA, but it declined to transport him between St. Paul's and Austin or to send a speech therapist to St. Paul's; (7) an administrative hearing officer upheld the Board's decision; (8) Donald B. then filed the instant action; and (9) Donald B. was, at the time of the district court's order, six years old and healthy, apart from his speech impairment.

In evaluating Donald B.'s legal claim in light of the facts it found, the district court correctly observed that this court had not delineated an analytical framework for the resolution of IDEA cases involving demands for related services. After reviewing the relevant authority, the district court concluded that *McNair v. Oak Hills Local Sch. Dist.,* 872 F.2d 153 (6th Cir.1989), prescribed the proper test in this context. It further held that Donald B. failed to satisfy *McNair* 's third prong which limits relief to cases in which the sought after "related service is designed to meet the unique needs of the child caused by the handicap...." *Id.* at 156. The district court also rejected Donald B.'s claim of entitlement to speech therapy on St. Paul's premises. Accordingly, it granted judgment as a matter of law in favor of the Board, its superintendent and its members.

II.

The district court's order of judgment as a matter of law and its underlying construction of the IDEA involve questions of law which this court reviews *de novo. See generally Nolen v.*

*Jackson,* 102 F.3d 1187, 1190 (11th Cir.1997).

Congress enacted the IDEA "primarily to make public education available to handicapped children and to make such access meaningful." *Irving Indep. Sch. Dist. v. Tatro,* 468 U.S. 883, 891, 104 S.Ct. 3371, 3376, 82 L.Ed.2d 664 (1984) (internal quotations omitted). The Act accomplishes this purpose by, *inter alia,* allocating funds to state and local public education units which then must comply with certain standards. Among its many requirements, the IDEA dictates that states formulate plans that allow children, such as Donald B., whose parents unilaterally place them in private schools to receive IDEA services. *See* 20 U.S.C. § 1413(a)(4) (conditioning receipt of IDEA funds upon state's willingness to see that "to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this part ... by providing for such children special education and related services").[2]

At all times relevant to this case, the Board has acknowledged that Donald B. qualifies for special education in the form of speech therapy. Donald B. sued the Board because it proposed to meet his needs by having him come to Austin during the school day to receive the special education to which he is entitled by law. Donald B. insists that under the IDEA the Board also must transport him between St. Paul's and Austin or, alternatively, it must provide speech therapy for him at St. Paul's. This litigation thus arises because the parties cannot work out a mutually agreeable arrangement for Donald B. to travel three blocks for speech therapy.

As noted above, the district court, following the Sixth Circuit's ruling in *McNair,*[3] determined

---

[2]As noted above, Congress recently amended the IDEA. The amendments do not alter substantively the provisions of the Act at issue in this case, but they do renumber and reorganize some of them. Because, however, the amendments have not been codified yet, we refer throughout this opinion to the prior codification. We also note that the Supreme Court's recent decision in *Agostini v. Felton,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (June 23, 1997), has no impact on this case because the Board never based its denial of Donald B.'s request for transportation or speech therapy services at St. Paul's on that school's status as a parochial institution.

[3]The *McNair* court denied a hearing-impaired child's transport request because her "need for transportation, although a related service, is no more unique to [her] because she is deaf than it would be if she were not deaf." *McNair,* 872 F.2d at 156.

that although transportation constituted a related service, *see* 20 U.S.C. § 1401(a)(17), the Board did not have to convey Donald B. to and from St. Paul's because that related service did not address the unique needs caused by his particular handicap. Specifically, it reasoned that because "Donald B. is afflicted with a speech impairment only and not a handicap affecting his ability to walk or move ... [his] handicap does not require any special transportation, and the transportation requested by Plaintiffs is not a reasonable and necessary service for meeting Donald B.'s unique needs." *Donald B. v. Bd. of Sch. Comm'rs of Mobile County, Ala.,* No. 94-0554-AH-S, slip op. at 6-7 (S.D.Ala. March 29, 1996). Although we agree that Donald B.'s speech-related disability does not *cause* directly a unique need on his part for transportation, we find the portion of the *McNair* test which could be construed to require such a showing inconsistent with the text of the IDEA.

Some language in the IDEA facially supports the view that a disabled child's right to related services attaches only when his or her impairment directly *causes* a unique need for a particular service. Specifically, the Act's purpose subsection appears to link both "special education" and "related services" to a disabled child's "unique needs". *See* 20 U.S.C. § 1400(c) (stating that purpose of IDEA is to provide disabled children access to "free appropriate public education which emphasizes special education and related services designed to meet their unique needs"). The Supreme Court, however, has noted that the definition section of the IDEA indicates that only "special education", and not "related services", must correlate to the "unique needs" associated with a child's specific disability. *See Irving Indep. Sch. Dist.,* 468 U.S. at 889, 104 S.Ct. at 3375. In contrast, the Court recognized that the Act defines a "related service" as an aid that " "may be required to assist a handicapped child to benefit from special education....' " *Id.* at 889-90, 104 S.Ct. at 3375 (quoting 20 U.S.C. § 1401(a)(17)). *See also id.* at 891, 104 S.Ct. at 3376 (noting that the IDEA "makes specific provision for services, like transportation, for example, that do no more than enable a child to be physically present in class").

Based upon the foregoing analysis, we conclude that, read in context, the IDEA requires transportation if that service is necessary for a disabled child "to benefit from special education," 20 U.S.C. § 1401(a)(17), even if that child has no ambulatory impairment that directly *causes* a

"unique need" for some form of specialized transport. This conclusion, however, does not resolve the instant case. We still must determine whether transportation is necessary for Donald B. to benefit from the special education to which he is entitled. To answer this question, we look both to the Supreme Court's construction of the IDEA and the Department of Education's regulations implementing the Act.

The Court has emphasized that "only those services necessary to aid a handicapped child to benefit from special education must be provided, regardless [of] how easily a school [official] could furnish them." *Irving Indep. Sch. Dist.,* 468 U.S. at 894, 104 S.Ct. at 3378. We cannot rely, therefore, as Donald B. suggests, on the inference that the school easily could send a teacher or aide to accompany Donald B. on foot or to carry him by automobile between St. Paul's and Austin. Instead, we must focus on the meaning of the word "necessary" in this context. We conclude that, based on the implementing regulations for the IDEA, transportation may be "necessary", under these or similar circumstances, if in its absence a disabled child in private school would be denied "a genuine opportunity for equitable participation in [a special education program]," 34 C.F.R. § 76.651(a)(1), or special education program benefits "comparable in quality, scope, and opportunity for participation ... [to those provided for] students enrolled in public schools," 34 C.F.R. § 76.654(a).[4]

The Board has offered Donald B. speech therapy pursuant to an IEP, just as it provides for other students at Austin. The only obstacle to Donald B.'s full participation in the special education program at Austin is literally three blocks. In our view, the factors relevant in determining whether a child in this situation needs transportation as a related service include at least: (1) his or her age; (2) the distance he or she must travel; (3) the nature of the area through which the child must pass; (4) his or her access to private assistance in making the trip; and (5) the availability of other forms of public assistance in route, such as crossing guards or public transit.

In this case, Donald B. has presented evidence of his age and the distance he must travel.

---

[4]These regulations constitute part of the Department of Education's General Administrative Regulations and are made applicable to IDEA programs pursuant to 34 C.F.R. § 300.451(b).

Although he is young (six at the time of the district court order, and, now, seven), he must cross only a short distance. Further, Donald B. has not offered any evidence that these three blocks encompass high crime or high traffic areas that he could not traverse easily. As to the other cited factors, the only possible showing by Donald B. stems from his counsel's assertion at oral argument that Donald B.'s mother cannot leave her job to assist Donald B. This specific fact does not appear in the record, although it arguably could be inferred from the stipulated facts regarding Christine B. Even if this assertion were credited, Donald B. still has failed to present evidence regarding other means, private and public, he might have at his disposal to assist him in covering the three blocks. On balance then, Donald B. has not carried his burden of showing that he is unable to travel to Austin without the Board's help.[5]

On this record, we cannot conclude that, by refusing to provide transportation for Donald B., the Board has deprived him of a genuine opportunity for equitable participation in a special education program, or has withheld special education benefits comparable to those it offers to public school students. As a result, on the facts of this case, the related service of transportation is not necessary for Donald B. to benefit from special education. Similarly, Donald B. has failed to show that, by offering him speech therapy at Austin rather than at St. Paul's, the Board neglected to afford him an adequate opportunity to access IDEA-mandated special education. We affirm, therefore, the district court's decision that the Board need not send a speech therapist to St. Paul's to comply with the IDEA.[6]

### III.

For these reasons, the district court's order granting judgment as a matter of law to the Board,

---

[5]In fact, according to the uncontested representations of the Board's counsel made at oral argument, Donald B. currently comes to Austin for weekly speech therapy sessions without the Board's aid.

[6]The IDEA authorizes local education units "to make public personnel available in other than public facilities," but only "[t]o the extent *necessary* to provide *equitable program benefits* designed for students enrolled in a private school...." 34 C.F.R. § 76.659(a) (emphasis added). *See* 34 C.F.R. § 300.451(b) (making requirements of 34 C.F.R. §§ 76.651-76.662 applicable to IDEA programs). *See also* 111 Stat. 37, 62 (amending § 612 of IDEA to codify regulations and caselaw authorizing, but not mandating, provision of special education services in private schools).

its superintendent and its members on Donald B.'s IDEA claim is AFFIRMED.